### THE STATE v. ROBERT ANDERSON.

1.  A statute authorizing the prosecution of the offence of keeping a disorderly house by a city court, without an indictment found by a grand jury, is illegal, on constitutional grounds.
2.  Not so a statute authorizing a prosecution for the sale of ardent spirits without a license.

On case certified from the Passaic Quarter Sessions.

The facts of the case sufficiently appear in the opinion of the court.

Argued at February Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the state, *A. B. Woodruff.*

For the defendant, *Griggs.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    From the facts agreed upon, it appears that there are two indictments in the county of Passaic against the defendant : the one for the sale of ardent spirits without license, and the other for keeping a disorderly house, by frequently selling therein ardent spirits contrary to law.    Both offences were committed in the city of Paterson,

State v. Anderson.

in which city there was, at the time in question, an ordinance forbidding the keeping of a disorderly house within the city, under a penalty of $25.

By the act approved March 26th, 1874, (*Rev., p.* 493,) it is declared that the provisions of the thirty-seventh section of the act concerning inns and taverns, and those of the supplements thereto, approved respectively March 8th, 1848, and February 20th, 1849, which are the clauses making it an indictable offence to sell ardent spirits without license, shall not thereafter apply to offences committed in any of the incorporated cities of this state, the ordinances of which shall provide for the punishment of the unlicensed sale of spiritous liquors, and for the punishment of the same on Sunday. The second section of the same statute. enacts, that where the ordinances of such cities provide for the punishment of the offence of keeping a disorderly house, it shall not thereafter be lawful to prosecute, by indictment, any person accused of keeping a disorderly house in such city, where the alleged offence consists only of the continuous or frequent violation of the provisions of the laws above mentioned inhibiting the sale of ardent spirits by unqualified persons.

As it is manifest that the two indictments in this case, the one being for the unlicensed sale of ardent spirits, and the other for repetitions of the same offence, contravene, with perfect directness, the prohibitions of this last cited statute, the only questions to be solved are—First. Whether such act is in force; and, Second. Whether it is constitutional.

That this act has not been repealed, I am entirely clear. The contention that is set up against its existence is to this effect: the sections of the law restrictive of the sale of spirituous liquors formerly stood in the statutes relating to inns and taverns, but, by the late revision, they were transferred to the crimes act, and this latter act was passed the day next after the above-mentioned act of 1874, which establishes, in this department, a separate system, under certain conditions, in the cities of the state. From this sequence, it is argued that, by the transference of these clauses of the act relating to

inns and taverns into the crimes act, and their re-enactment into the body of that act, and by force of the general repealer contained in the revision, this statute, clothing cities with these particular privileges, was rescinded.

If this view is sound, then the legislature gave these municipal powers one day, and took them away the next; a supposition which, on account of its looking more like a caprice than an act of judgment, would not be entertained on light grounds. But, in fact, the imputation of this legislative inconsistency comes from a misapplication of legal rules. It has often been adjudged that the ordinary law relating to the repeal by implication of statutory provisions, does not apply to acts which are re-enacted because they have been re-arranged or consolidated. When the body of statutory law is revised and re-enacted, the general purpose is obvious, and such purpose is not to change the existing system, except in cases where the intention to do so is clearly specified; and hence it is that the order of time in which such a series of consolidated acts receive the official sanction, is of little, if of any, moment in a question of implied repeal. The statutes annexed to the recent revision, providing for the repeal of unnecessary or repugnant laws, are, in the main, specific in their reasons, and the general clauses contained in them cannot be extended to any but the plainest instances of repugnancy, for to use such broad and indefinite provisions loosely would occasion the utmost uncertainty and disorder. The proper rules of construction are those indicated and expounded in *Clement* v. *Kaighn*, 2 *McCarter* 47, and in the *State* v. *Kingsland*, 3 *Zab.* 85, and more recently in the Court of Errors, in *Ruckman* v. *Ransom*, 6 *Vroom* 565. It is clear that, upon the basis of these principles, the conclusion in this case must be that the act in question was not repealed in the manner claimed, but that, to the contrary, such act is still in force, and applies to the facts of this controversy.

With respect to the second question—is the act constitutional.

The keeping of a disorderly house is a crime indictable at

common law, and in this state it is punishable by fine and imprisonment in the state prison. Therefore, it is clear that if this offence can, for the purpose of crimination, trial and punishment, be put into the hands of these municipal authorities, it follows that all common law offences of the same grade can be, in like manner, so deposited. This, I think, cannot be conceded. Such an arrangement would, in a very plain way, infringe an important provision of the constitution of this state. Article I., section 9, of that instrument declares that "No person shall be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace," &c. The purpose of this clause was to prevent the bringing of any citizen under the reproach of being arraigned for crime before the public, unless, by a previous examination taken in private, the grand inquest had certified that there existed some solid ground for making the charge. It took from the law officer of the state, the attorney-general, one of the established prerogatives of his office: that of filing his information against supposed offenders, and thus putting them on trial at his own volition. The reputation of every man was thus put under the care of a single specified body. The language of the constitutional clause is very comprehensive, and the specified exceptions show conclusively that it was intended to cover the residue of the entire field of criminal accusation. In the presence of such a prohibition, how then is it permissible to put a man on trial before a city court, charged with this common law offence, without the preliminary sanction of a grand jury? If it be said the punishment is only a fine, the answer is, the restraining clause in question has nothing to do with the result or effect of the trial, its object being to save from the shame of being brought before the bar of a criminal court, except in the authorized method after an antecedent inquisition. I am clearly of opinion that a trial of a person for this offence before the municipal court would be an act utterly void.

This conclusion also has led me to the further result that

the clause of the statute in question must be held to be a nullity. The declaration that was intended to prohibit the trial of the offence of keeping a disorderly house by an indictment, is too dependent on the establishment of another mode of trial and punishment to permit it to stand as an independent provision. The repeal of the old method of prosecution, and its substitute, are part of a scheme, and as the scheme fails, the entire section must fail. The present indictment for this crime is sustainable.

With regard to the other indictment, the questions involved are of a different character. The offence of selling liquor without a license is a purely statutory offence. Independently of a prohibition by the legislature, such a sale is neither immoral nor illegal, and the law-maker, therefore, can put it under such control as may be thought best. Not being in its nature an indictable offence, it can be made punishable by a penalty, without indictment. Such is the effect of the present law in certain localities, and I can perceive nothing unconstitutional or illegal in such an arrangement. This law, therefore, which gives the exclusive right of prosecution and punishment to the city of Paterson in this case, is valid and must be sustained.

The sessions should be advised accordingly.