STATE ex rel. CITY OF ST. PAUL v. ST. PAUL CITY RAILWAY COMPANY.

December 15, 1899.

Nos. 11,686—(10).

## City of St. Paul—Use of Streets by Street Railway—Ordinances.

A municipality cannot abdicate or barter away, at least without express legislative authority, its governmental powers conferred upon it for public purposes.   Hence any authority to use the streets granted to a street-railway company must be construed as being subject to the general

police power of the municipality over the public streets. Section 18 of Ordinance No. 1227 of the city of St. Paul, known as the "General Electric Ordinance," construed, and *held*, that the power therein reserved to the common council to order the St. Paul City Railway Company to extend any existing or future lines of its railway is not limited to extensions on streets or parts of streets not provided with any car service, but authorizes the extension of the car service of one line to or into the business or central part of the city, over streets or parts of streets upon which there is an existing track upon which the cars of another line are already operated.

Alternative writ of mandamus from the district court for Ramsey county directing defendant to extend its lines of street railway in accordance with Ordinances Nos. 1925 and 1227 of relator and to operate its cars thereon or to show cause why it should not be done. The case was tried before Bunn, J., who found in favor of defendant and directed the writ to be dismissed. From an order denying a motion for a new trial, relator appealed. Reversed.

*James E. Markham*, for appellant.

Ordinance No. 1925 is valid as a proper exercise of the power reserved by Ordinance No. 1227, § 18. Ordinance No. 1925 is furthermore a proper exercise of the police power of the city, and should be sustained as such. In determining what regulations are reasonable and necessary in the exercise of the police power, much must be left to the judgment and discretion of the common council. When they have exercised their judgment and discretion in passing an ordinance, it is prima facie valid; and to justify a court in setting aside their action its unreasonableness and want of necessity as a measure for protection of the interests of the public must be clearly manifest, and it must amount to an abuse of discretion or a mere arbitrary exercise of power. Evison v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 370; Knobloch v. Chicago, M. & St. P. Ry. Co., 31 Minn. 402; People v. Detroit, 116 Mich. 132. Where a business is a proper subject of police regulation, the legislature may adopt any measures they see fit, provided they adopt such as have some reasonable relation to, and tendency to accomplish, the desired end; in which case the courts will not assume to determine whether the measures are wise,

or the best that might have been adopted. State v. Donaldson, 41 Minn. 74; Rippe v. Becker, 56 Minn. 100; Mayor v. Dry Dock, 133 N. Y. 104; Milwaukee E. Ry. & L. Co. v. City of Milwaukee, 87 Fed. 577, 578. By the city charter (chapter 4, § 3), the legislature has conferred on the common council power to make this regulation and to adopt all needful measures for protection of the public interests. The laws of the city, by way of ordinance and resolution, on subjects named and within the powers delegated by that section, are as effectual as if they emanated directly from the legislature. City of St. Paul v. Smith, 27 Minn. 364, 366; State v. Robinson, 42 Minn. 107.

The charter confers on the common council "the care, supervision, and control of all the public highways, bridges, streets, alleys," etc.; authority to ordain such ordinances as shall be deemed expedient "for the good government of the city, the protection of its property, the preservation of peace and good order, the suppression of vice, and the benefit of trade and commerce"; and authority to regulate * * * hacks, carts * * * and other vehicles, etc. These provisions amount to a grant of police power, including the right to regulate travel in the public streets. State v. Robinson, supra. The company's cars are vehicles within the term of the charter. City of Duluth v. Mallett, 43 Minn. 204. See Frankford v. City, 58 Pa. St. 119; Mayor v. Third Ave., 117 N. Y. 404; Milhau v. Sharp, 17 Barb. 435; State v. Herod, 29 Iowa, 123. The imposition of the duty of supervision and control of the streets is a sufficient grant of power to adopt all needful ordinances for regulation of travel in the streets. Michigan Tel. Co. v. City of Charlotte, 93 Fed. 11. See Horr & B., Pol. Ord. § 30.

All contracts of municipal corporations not authorized by charter are void. 1 Dillon, Mun. Corp. (4th Ed.) § 89; Spaulding v. City, 23 Pick. 71. The only express power granted with reference to street railways is found in Sp. Laws 1889, c. 37. Even if this provision applies to electric railways, intention to authorize the city to contract for a period of years will not be inferred. Fertilizing Co. v. Hyde Park, 97 U. S. 659, 666. The manifest purpose of the ordinance authorizing the company to lay tracks, etc., was to confer the exclusive right of carrying passengers for profit on these

streets. Davis v. Mayor, 14 N. Y. 506, 516. The grant of a practical monopoly and of an easement in the streets beyond the power of the city to recall or to regulate ought not to be inferred, unless the language of the grant clearly authorizes the making of such a contract. Richmond v. Town, 59 N. Y. 228; Long v. City of Duluth, 49 Minn. 280; City v. Danville, 178 Ill. 299; South Covington v. Berry, 93 Ky. 43; City of Detroit v. Detroit C. Ry. Co., 56 Fed. 867. The contract is not authorized under the head of governmental powers. The ordinance is at most effective as a mere license. Nash v. Lowry, 37 Minn. 261.

Even if the ordinances were in the nature of contracts within the power of the city to make, the company must be deemed to have accepted them with knowledge that the city had power to legislate by ordinance as to streets and highways, and to make all needed regulations for convenient enjoyment of the same by the citizens; and the company is bound by an implied agreement to hold its privileges subject to proper exercise of the police power. The legislature cannot deprive itself by contract of the right to pass such laws as are necessary for the general welfare of the public. Flynn v. Little Falls E. & W. Co., 69 Minn. 180; City v. Fort Wayne, 95 Mich. 456; Sternberg v. State, 36 Neb. 307; West Philadelphia v. City, 10 Phila. 70; South Covington v. Berry, supra; Frankford v. City, supra; City v. Navin, 151 Ind. 139; City v. McKeesport, 2 Pa. Supr. Ct. 242; People v. Boston, 70 N. Y. 569; State v. City, 59 N. J. L. 396; Munn v. Illinois, 94 U. S. 113; Fertilizing Co. v. Hyde Park, supra; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98; Chicago, B. & Q. R. Co. v. Nebraska, 170 U. S. 57; Michigan Tel. Co. v. City of Charlotte, supra. See also Rippe v. Becker, supra; Sinking Fund Cases, 99 U. S. 700, 747; Stone v. Mississippi, 101 U. S. 814, 819; Corporation v. Mayor, 5 Cow. 538; Wabash R. Co. v. Defiance, 167 U. S. 88; 1 Dillon, Mun. Corp. § 97; Elliott, Roads & S. 573. In any case, such a contract, by which the hands of the city would be tied fast for 50 years, would be unreasonable, and beyond the power of its officers to make. Flynn v. Little Falls E. & W. Co., supra.

*Munn & Thygeson*, for respondent.

Ordinance No. 1925 is not authorized by Ordinance No. 1227.

Ordinance No. 1227 and the other ordinances appearing in the record constitute a contract, the full nature and extent of which it is not necessary to determine in this case.   That issue was not presented below, and consideration of other ordinances and evidence are necessary to its determination.   Should the court deem it necessary to consider the question, the following provisions of the charter and authorities are referred to.   Section 1 of the charter provides that the city shall be capable of contracting, and shall have the general powers of municipal corporations at common law, and in addition the powers thereinafter specifically granted.   Power is given to the common council "to grant the right of way upon * * * any of the public streets * * * to a steam railway or horse railway company or corporation, upon such limitations and conditions as they may prescribe by ordinance" (chapter 4, page 53).   The only limitations on this power are found on page 56, where certain limitations are imposed as to steam railways, and then follows a proviso that such limitations shall not apply "to any railroad running cars upon the surface of the streets and not using steam as a motive power."   This shows that it was the intention of the legislature to confer as broad power as possible relative to granting rights to surface roads, i. e., street railways.   See Cleveland C. Ry. Co. v. City of Cleveland, 94 Fed. 385; Walla Walla City v. Walla Walla W. Co., 172 U. S. 1; New Orleans G. Co. v. Louisiana L. Co., 115 U. S. 650; New Orleans Water-Works Co. v. Rivers, 115 U. S. 674; Louisville G. Co. v. Citizens G. Co., 115 U. S. 683; St. Tammany Water-Works v. New Orleans Water-Works, 120 U. S. 64; City Ry. Co. v. Citizens St. R. Co., 166 U. S. 557, 562; Old Colony T. Co. v. City of Atlanta, 83 Fed. 39; Cooley, Const. Lim. 335; Booth, St. Ry. Law, § 36; Morawetz, Corp. §§ 1050, 1051; Van Hostrup v. Madison City, 1 Wall. 291; City v. Newport, 84 Ky. 166, 170; City of Savannah v. Kelly, 108 U. S. 184; Los Angeles City W. Co. v. City of Los Angeles, 88 Fed. 720; Levis v. City of Newton, 75 Fed. 884, 887; Detroit C. St. Ry. Co. v. City of Detroit, 64 Fed. 628; Columbus v. City, 46 Kan. 666; Columbus v. City, 48 Kan. 99; Evansville v. Dennett, 161 U. S. 434; Christensen v. City, 45 Neb. 160; Dickson v. Kewanee, 53 Ill. App. 379; City v. Consumers, 140 Ind. 107.

Whether the ordinance can be enforced as a police regulation ought not to be considered in this appeal. The exercise of the police power, however, must be confined to matters necessary to protect the public peace, health and morals; and the power must be exercised on grounds that are reasonable and necessary. Town v. Rose Hill, 70 Ill. 191; Rippe v. Becker, 56 Minn. 100, 112. The power must be exercised in a prohibitive and restrictive manner. Under the guise of police power the municipality has not authority to order the extension of street railway lines or the building of new lines. Moreover the ordinance is unreasonable, and does not benefit the public.

A municipal corporation has two distinct classes of powers, governmental and business. Illinois T. & S. Bank v. City of Arkansas City, 76 Fed. 271, 282; City v. Consumers, supra. It was in the exercise of its business powers that the city made a contract with the company. The language of the charter is broad enough to authorize the construction of electric street railways. Buckner v. Hart, 52 Fed. 835; Paterson v. Grundy, 51 N. J. Eq. 213; State v. Trenton, 58 N. J. L. 666; State v. Mayor, 57 N. J. L. 293; Cumberland v. United, 93 Tenn. 492; San Antonio v. Limburger, 88 Tex. 79; Simmons v. City, 8 Oh. C. Ct. 535; Dean v. Ann Arbor, 93 Mich. 330; People v. Fort Wayne, 92 Mich. 522. City of Detroit v. Detroit, cited by appellant, was reversed in 64 Fed. 628. See also Baltimore T. & G. Co. v. Mayor, etc., of City of Baltimore, 64 Fed. 153; City Ry. Co. v. Citizens St. R. Co., supra; Hinchman v. Paterson, 17 N. J. Eq. 75; Jersey City v. Jersey City, 20 N. J. Eq. 61, 69; Atchison v. Missouri, 31 Kan. 660; Brown v. Duplessis, 14 La. An. 842; State v. Corrigan, 85 Mo. 263; 2 Dillon, Mun. Corp. (4th Ed.) § 724.

MITCHELL, J.

On September 20, 1889, the city of St. Paul passed Ordinance No. 1227, commonly known as the "General Electric Ordinance," by which the defendant was authorized to construct and maintain on the streets of the city 16 different lines of street railway, all of which converged in or towards the central or business portion of the city. These, when taken together, made a complete system, run-

ᵥning to and from all parts of the city, and were evidently considered sufficient to accommodate the then present needs of the public. But as it was anticipated that, by reason of the future growth of the city or other causes, the needs of the public might require additional or different accommodations, it was provided by section 18 of the ordinance that

"The common council reserves and shall possess the right, at any time, and from time to time, after January 1, 1892, to order the construction and completion, by 'said St. Paul City Railway Company, of any new lines of railway, or the extension of any present or future lines of railway upon any and all streets in the city of St. Paul upon which sewers shall have been constructed, and all lines or extensions so ordered shall be constructed and in operation within one year after such orders are made: provided, that when such new lines or extensions are constructed all of the provisions of this ordinance shall apply thereto."

The City Railway Company accepted the provisions of this ordinance, and constructed and are operating all the lines therein provided for. Among the lines provided for was one commencing on Fifth street at Wacouta street; thence, on Fifth street to Wabasha street; thence, on Wabasha street, to University avenue; and thence, on University avenue, to the west limits of the city. This line was known as the "University Avenue Line." This is the line upon which the University avenue Interurban cars are operated, except as hereinafter stated. On May 20, 1890, the common council passed Ordinance No. 1339, amendatory of, or supplemental to, Ordinance No. 1227, authorizing the City Railway Company to construct and operate a single track on Eighth street, from Robert street to Wabasha street, to be used by the railway company as a "loop," upon which all the cars entering that portion of the city should be run, excepting under circumstances which should render running thereon impracticable. Of course to render this line available as a "loop," it was necessary to use in connection with, and as a part of it, the existing line on Robert street. The city railway accepted the provisions of this supplemental ordinance, and built the line on Eighth street and since that time, instead of operating their University avenue Interurban cars on Fifth street down to Wacouta street, run them around the Robert and Eighth street "loop."

78 M.—22

On May 16, 1893, the city council passed still another amendatory ordinance, No. 1686, by which the city railway company was authorized to change the East Seventh street line into an electric line, and to connect it with the West Seventh street line, and further providing that the cars operated on the Maria avenue line provided for in Ordinance No. 1227, should be thereafter run on East Seventh street as far west as Robert street. The railway company accepted the provisions of this ordinance, and made the authorized changes, so that the Seventh. street cars are now operated as a continuous line from Fort Snelling to Duluth avenue in the eastern part of the city, and the Maria avenue cars are run down Seventh street to Robert street. By this same ordinance the defendant company was required to construct and operate a double-track line of railway beginning at the intersection of Rice street and Como avenue, thence along Como avenue to its intersection with Front street, thence along Front street to its intersection with Chatsworth street, thence along Chatsworth street to its intersection with Van Slyke avenue, thence along Van Slyke avenue to Como Park. This is what is known as the Como Park line. The ordinance provided that the cars operated over this line should be run "to and from the central portion of the city." The Como avenue line, ever since its construction, has been operated over the route above specified to Wabasha street, and thence on Wabasha street to Fifth street, thence down Fifth street to Robert street, and thence on Robert and Eighth streets around the Eighth street "loop" back to Wabasha street.

On May 8, 1897, the city council passed still another ordinance, No. 1925, by which the defendant was ordered and directed within one year to change and extend the operation of its University avenue, or Interurban, and its Como avenue lines of cars by running them easterly on Fifth street to Broadway street (a distance of five blocks east of Robert street), thence north on Broadway to Seventh street (a distance of three blocks), thence west on Seventh street to Wabasha. The effect of this was to extend the service of these two lines five blocks further east, and to make the "loop" on Broadway and Seventh streets instead of Robert and Eighth streets as before. These portions of Fifth, Broadway and Seventh streets

were already provided with car service by other lines, and the proposed change and extension of the service of the Interurban and Como lines would not require the construction of any new track.   It is conceded that sewers had been already constructed upon all of these streets.   The defendant having refused to comply with the provisions of this ordinance, this proceeding was brought at the relation of the city to compel it to do so.   The defendant claimed . that the ordinance was void, because it was required to do what it was not required to do under the general electric ordinance No. 1227, and not within the power reserved to the city council under section 18 of that ordinance.   The trial court sustained this contention and held that Ordinance No. 1925 was void.

The trial seems to have been conducted upon the theory that Ordinance No. 1227 was to be construed precisely as if it was a contract between two private individuals.   It is but fair to say that counsel for the city was largely responsible for this.   This, however, is altogether a too narrow, and even erroneous, view to take of the case.   We shall assume, without discussion, that Ordinance No. 1227 contains a valid contract between the city and the street railway company, the obligation of which the former cannot impair.

But this proposition is subject to the following qualification. Among the governmental powers vested by the city charter in its common council is "the care, supervision, and control of all public highways, bridges, streets," etc.   Without attempting to define the extent or limits of the power thus granted, it unquestionably gives the common council authority to enact such police regulations regarding the use of the streets as are necessary for the safe and convenient enjoyment of them by the public for the purposes for which they are designed.   It is fundamental that a municipality cannot, at least without express legislative authority, deprive itself by contract of any governmental powers conferred upon it for public purposes.   Flynn v. Little Falls E. & W. Co., 74 Minn. 180, 77 N. W. 38.   Hence any authority to use the streets granted to the defendant must be construed as being subject to the police power of the city over the streets, whatever may be the language of the grant.   For example, if by reason of increased traffic on the streets prescribed for the construction and operation of the "loop," or for

any other reason, the use of those streets for that purpose became inconsistent with the convenient use of the streets by the public, or a menace to the safety of the public, in our opinion it would be unquestionably within the police power of the city to enact an ordinance requiring the loop to be changed to some other reasonable location. In short, while a municipality cannot impair the obligation of its contract under the guise of exercising its police power, yet it cannot surrender or barter away its police powers under the guise of making a contract.

Whether Ordinance No. 1925 was enacted in the exercise of the "police power," strictly so called, or to secure more and better service for the traveling public by the extension of the Interurban and Como avenue lines, and, if the former, whether it was or was not a reasonable exercise of the police power, does not appear. Of course, if the ordinance was enacted in the exercise of the police power, it will be presumed to be reasonable and valid until the contrary is made to appear. Both of the counsel seem to have tried the case upon the assumption that the object of the ordinance was to extend the service on the Interurban and Como avenue lines, under the authority reserved to the city council by section 18 of Ordinance No. 1227. The court also decided the case upon this theory. But, even on this assumption, in our judgment, the facts did not justify the conclusion at which the court arrived.

The position taken by the court below, and by the counsel for the defendant in this court, was that the power reserved to the common council in section 18 was only the right to compel the construction of new lines, or the extension of present or future lines, on streets or portions of streets not already provided with street-car service, and not the right to compel the extension of the service of the cars of one line over or along streets or portions of streets upon which other lines are already operated. In support of this view, especial stress is laid upon the particular words and expressions used in the section, such as "the construction and completion," and "shall be constructed and in operation"; also upon the fact that the ordinance provides for a complete system of transfers from one line to another, without additional cost, and requires the cars on all lines to be

operated with sufficient frequency to accommodate the traveling public.

With all due deference to the learned court and counsel, we think they attach altogether too much weight to these facts The right of transfer from one line to another, without extra charge, is, as every one knows, not the equivalent of a continuous ride on the same car to the place of destination. Again, while it is probably true that what was more particularly in mind in framing this section was cases where public convenience would require car service on streets or parts of streets not already provided with any car service at all, and hence where the extension of the service would involve the construction of a track, yet there is nothing in the section which limits its operation to such cases. A railway track is only a means to an end. What is needed is not merely the track, but the service. That is what the section was designed to secure. There is nothing in it limiting the right to require an extension to the outer end of an existing line. Public needs may require it at either end. The plan or scheme of street-railway systems is generally to furnish the means of communication between the outlying portions of a city and its business or central portion. This was evidently the scheme of the system of lines provided for in Ordinance No. 1227. As the business portion of a city increases in area, or its business center shifts, as is often the case, there arises a necessity for extending the street-car lines inwardly, so as to reach or penetrate it. If there had been no existing line operated on Fifth street between Robert street and Broadway street, or upon Broadway between Fifth and Seventh streets, or on Seventh from Broadway to Wabasha street, we do not see how it could be successfully claimed that the extensions required by the common council were not within the provisions of section 18. Why should it be held not within them merely because there is already a railway track on those streets, over which the extended service is to be furnished, and hence the defendant not required to incur the expense of building one? It seems to us that it is a case for the application of the axiom that the whole includes all its parts.

But it is suggested that, if this extension can be required, there is no limit to the power of the common council in the matter of ex-

tending the service of one line over tracks used by any other line; that, on the same ground, it would have authority to require the Interurban and Como avenue cars to be run over the Seventh street line, out to the eastern limits of the city, or over to West St. Paul. This by no means follows. There is reason in all things. As already suggested, Ordinance No. 1227 contemplates a system of lines converging towards, or terminating in, the central or business portion of the city, so as to furnish a means of communication between it and the outlying portions of the city. How far and to what distance any of these lines shall be extended into this business or central portion of the city is, and must of necessity be, a matter largely addressed to the judgment and discretion of the common council. But if it was attempted to require the extension of the service of any line over a track on which another line was operated, entirely through the central portion of the city, out into a suburban district on the opposite side of the city, we apprehend that, unless there were some very exceptional circumstances creating a necessity for it, a court would very unhesitatingly hold that the common council had no authority, under either section 18 or the general police power, to require this to be done. There is nothing in the record tending to prove that this is any such case.

Our conclusion is that the order appealed from should be reversed, and the case remanded for a new trial. It is so ordered.