317 P.2d 597

J. A. STEVENSON et al., members of Intermountain Music Operators Association, an unincorporated association, Plaintiffs and Respondents,

v.

SALT LAKE CITY CORPORATION and Cleon Skousen, Salt Lake City Chief of Police, Defendants and Appellants.

No. 8638.

Supreme Court of Utah.

Nov. 5, 1957.

Concurring Opinion Nov. 7, 1957.

2. See United States Building & Loan Ass'n v. Midvale Home Finance Corp., 86 Utah 506, 44 P.2d 1090.

E. Ray Christensen, City Atty., Homer Holmgren and Donald B. Holbrook, Asst. City Attys., Salt Lake City, for appellants.

R. J. Rimensberger, Salt Lake City, for respondents.

WADE, Justice.

This appeal is from an order enjoining the City of Salt Lake and its Chief of Police from enforcing Chapter 2 of Title 32 of the Revised Ordinances of Salt Lake City, 1955, as amended November 15, 1956, on the ground that it exceeds the powers granted it by the Utah State Legislature. This ordinance reads as follows:

"Section 32–2–1. Prohibition of Bagatelle, Pinball, and Marble Machines, Etc. It shall be unlawful for any person, firm or corporation or any other group or association of individuals however styled or designated, to keep, use, maintain, possess, permit, allow, or have under control, or make available in any store or place of business or establishment in which the public may enter or be upon, or in any other place of public resort, or in any place of business, club, association, or establishment where without warrant the right of direct police inspection exists within the corporate limits of Salt Lake City, either as owner, bailee, lessee, agent, employee, mortgagee or otherwise, any of the following where the operation, use or play of which is controlled or set in operation by the deposit of any coin, plate, disk, plug,

key or other subject or by the payment of any fee or charge:

"(a) Any game of bagatelle, pigeonhole or device or contrivance commonly known as pin game, pin ball game, marble, one shot marble game;

"(b) Any game, device, contrivance or machine which contains a payoff or award device, or mechanism for the return of money, coins, slugs, checks, credit, tokens or for the delivery of anything of value or representing or exchangeable or redeemable for anything of value; provided, that this section shall not cover the items included in Section 2 of this ordinance." [Sec. 2 exempts merchandise vending and music producing machines.]

Salt Lake City bases its right to enact such ordinance upon the powers granted in Sec. 10-8-84, U.C.A.1953, which is a general grant of power to enact ordinances and pass regulations to carry out the powers granted to it in Chapter 8, U.C.A. 1953 and those which are "necessary and proper to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order * * *" of the city and upon Sec. 10-8-40, U.C.A.1953, which reads:

"Resorts and amusements.—They may license, tax, regulate and suppress billiard, pool, bagatelle, pigeonhole or

any other tables or implements kept or used for similar purpose; also pin alleys or table, or ball alleys; may also license, tax, regulate, prohibit or suppress dancing halls, dancing resorts, dancing pavilions, and all places or resorts to which persons of opposite sexes may resort for the purpose of dancing or indulging in any other social amusements."

In Utah the rule of construction to which we are committed is well stated in American Fork City v. Robinson, 77 Utah 168, 292 P. 249, and specifically approved in Morgan v. Salt Lake City, 78 Utah 403, 3 P.2d 510, 511, to the effect:

"That the powers of the city are strictly limited to those expressly granted, to those necessarily or fairly implied in or incident to the powers expressly granted, and to those essential to the declared objects and purposes of the corporation, is settled law in this state."

Sec. 10-8-40 expressly grants cities the right to license, tax, regulate and suppress the devices and contrivances listed in the ordinance and if the ordinance did merely that it would be valid. However, the ordinance goes beyond the powers granted it to license, tax, regulate and suppress. It prohibits the keeping for use any of the designated devices in any place of "public

resort" and any place where the police may inspect without warrant. Although ordinarily the words "suppress" and "prohibit" are somewhat synonymous in that they may mean to stop or prevent or keep back completely, they are clearly not meant to be synonymous in the statute involved herein. It is a common rule of construction that wherever possible each word in a statute must be given a meaning, and "that construction is favored which will render every word operative, rather than one which makes some words idle and nugatory." 50 Am.Jur., Statutes, Sec. 358, pages 363–4. If we were to hold that the legislature intended the words "suppress" and "prohibit" to be synonymous, we would have to overlook the fact that the legislature in Sec. 10–8–40 in dealing with billiard, pool, bagatelle, etc. only granted the cities the power to license, tax, regulate and suppress, whereas in dealing with the subject of dancing halls they were granted the power to license, tax, regulate, *prohibit* or suppress. If the legislature had not intended to grant different powers in the case of amusements than in that of resorts there would have been no necessity of dealing with them separately in the same section.

█ The question we have to determine is what power has been granted cities under the express grant to "suppress" billiard, pool and similar contrivances. It is apparent that the right to "suppress" must mean something less than the right to completely overpower or prevent if we are to give any meaning to the right to "prohibit" which is expressly granted with regard to resorts and withheld in the case of amusement devices. We are therefore of the opinion that the legislature in granting the cities the right to "suppress" the amusement devices enumerated therein intended that the cities have only the right to restrict in a reasonable manner the use of these machines. Since the cities may lawfully license the keeping or using of the contrivances, such use or possession cannot per se be unlawful in all cases. Although these contrivances are capable of being used for gambling purposes, unless they are so used or kept for such use their use or possession is not unlawful. By subsection (a) of the ordinance the city has made the possession or use of these contrivances in public places and places where police may enter without warrant for purpose of inspection unlawful regardless of whether they were being used as gambling devices or not. This is not reasonable. In doing so they have gone beyond the powers granted them by Sec. 10–8–40, U.C.A.1953. It is manifest that as a practical business matter the only machines which would be subject to license and regulation would be in those places forbidden by the ordinance. As stated in Johnson v. Town of Philadel-

phia, 94 Miss. 34, 47 So. 526, 527, where under an express grant to municipalities to " 'regulate, suppress and impose a privilege tax on circuses, shows, theaters,' etc., 'skating rinks' " and similar things, an ordinance attempting to close all such business between 6 p. m. and 6 a. m. was held invalid:

"The section of the Code giving a municipality the power to regulate and suppress gives no power to prohibit. Skating rinks and such like can be suppressed only when as a fact they become nuisances, and when they are regulated it must be in a reasonable way. In McQuillin on Municipal Ordinances, p. 79, it is said: 'The power "to regulate" will not be construed to include the power to prohibit. "A power simply to regulate does not embrace a power to prohibit or destroy a trade or occupation." Therefore ordinances to be valid cannot interfere with lawful employment.'

\* \* \* \* \* \*

"In the case of Crittenden v. Town of Booneville, [92 Miss. 277] 45 So. 723, the court said that the power given the municipality, under Section 3340, ' "to regulate, suppress and impose a privilege tax on all circuses, shows," etc., does not carry with it the power to prohibit, unless it is in the exercise of the police power to suppress a nuisance. The municipality may regulate; that is to say, it may provide the hours during which these places may keep open, etc., and if the conduct of the owner is such as to warrant it, or if it is conducted in a boisterous or immoral way, so as to become a nuisance, they may suppress altogether. But the power to regulate and suppress when the business has become a nuisance is one thing and the power to pass a general ordinance prohibiting the operation of a poolroom, which has been legalized by the statute, is another thing. The first they have the power to exercise. The second they are without power.' "

See also City of Meadville v. Caselman, 240 Mo.App. 1220, 227 S.W.2d 77, where under the law of the state of Missouri it was held that rights granted a city to regulate and suppress did not grant a right to prohibit and the words were not synonymous.

Affirmed.

McDONOUGH, C. J., and WORTHEN and HENRIOD, JJ., concur.

CROCKETT, Justice (concurring).

I concur but deem it advisable to make these observations. Although I concede there is some justification for the distinction made in the instant case, based on the difference in the statute discussed, I am not

particularly fond of the nicety of distinction (sometimes referred to in less euphonious phrases) which is necessary to interpret "suppress" as not meaning or equivalent to "prohibit." Therefore, I desire to add what, in my opinion, is a more fundamental and satisfactory ground for concluding that the ordinance is invalid.

It is urged that these devices are so readily adaptable to gambling, that they are subject to interdiction under the police power. It is undoubtedly true that they may be easily used for gambling, but the fact that the legislature has provided that they may be licensed, taxed and regulated seems to indicate that the legislature did not regard them as evil per se. They, of course, can be used as games of skill and amusement only. They are only evil if put to an evil use. Unless some aspect of the devices themselves, or their manner of use, were regarded as in some way affecting the health, morals or welfare of the public, there would be no foundation upon which to base their prohibition under the police power, and it would be doubtful whether the city, or the legislature itself, could prohibit them any more than they could prohibit bowling or pitching horseshoes, or almost any other game one might mention, most of which readily accommodate themselves to gambling by those so inclined.