430 P.2d 371

SALT LAKE CITY, a municipal corporation, Plaintiff and Respondent,

v.

Peggy ALLRED, aka Peggy Lovejoy, aka Thelma Allred, Defendant and Appellant.

No. 10752.

Supreme Court of Utah.

July 17, 1967.

Hatch & McRae, Salt Lake City, for appellant.

Don L. Bybee, Jack L. Crellin, Asst. City Attys., Salt Lake City, for respondent.

TUCKETT, Justice.

The defendant was charged with a violation of Sec. 32–2–1, Revised Ordinances of Salt Lake City, 1965. The defendant was convicted in the City Court and thereafter

appealed to the District Court. From a verdict of guilty after trial in the District Court, the defendant has appealed to this Court claiming that the ordinance under which she was charged is invalid and unconstitutional.

The defendant was charged with aiding and abetting an act prohibited by Subsection 7 of the ordinance above referred to. The provisions of that section are as follows:

> Direct or offer to direct any person to any place or building for the purpose of committing any lewd act or act of sexual intercourse for hire or of moral perversion.

The complaint, although it is not before us, appears to be laid under the provisions of Subsection 8 of the above ordinance which provides as follows:

> Aid, abet, allow, permit, or participate in the commission of any of the acts prohibited in subsections (1) through (7) above.

It appears from the instructions of the court that the defendant was charged with aiding and abetting in the commission of a crime in that the defendant directed a police officer to a certain apartment to obtain sexual intercourse for hire.

The defendant attacks the ordinance upon three grounds, namely: (1) that the ordinance in question is beyond the authority granted by the legislature to the city; (2) that the ordinance is so vague and ambiguous as to be unconstitutional; (3) that the ordinance in question attempts to make crimes of acts which are not crimes under the laws of the State of Utah.

In dealing with the first claim of the defendant as above set forth, the City contends that it was authorized to adopt the ordinance by the provisions of three separate sections of the State statutes. Section 10-8-41, U.C.A.1953, empowers cities to act as follows:

> They may suppress or prohibit the keeping of disorderly houses, houses of ill fame or assignation, or houses kept by, maintained for, or resorted to or used by, one or more females for lewdness or prostitution * * *.

Section 10-8-51, U.C.A.1953, grants to cities the right to deal with prostitutes in the following language:

> They may provide for the punishment * * * of prostitutes * * *

and the provisions of Section 10-8-84, U.C.A.1953, which contains the general grant of authority to cities which the City contends is sufficient authority for the City to adopt the ordinance in question. The pertinent provision of the statute claimed by the City to grant it authority to deal with the matters referred to in the ordinance is as follows:

> [T]o * * * promote the prosperity, improve the morals, peace and good order, comfort and convenience of city * * *.

It will be noted that the first two of the statutes above referred to deal with prostitution. While the ordinance we are considering contains no definitions of the terms used therein, nevertheless, it is quite evident that the ordinance was not designed to deal with prostitution. The generally accepted definition of prostitution is the practice of a female offering her body to indiscriminate sexual intercourse with men.[1] The ordinance in question goes beyond the grant of power by the legislature to the cities to suppress prostitution. We are now faced with the problem of determining whether or not the general grant of power to the cities by the legislature as contained in Section 10–8–84, U.C.A.1953, was intended to grant to the cities the right to regulate offenses as specified in the ordinance here in question.

The State statutes dealing with sexual offenses are comprehensive and all sexual relations except those between husband and wife are declared to be unlawful and are denounced as crimes, as an examination of Chapter 53, Title 76 will disclose. With the exception of Section 76–53–5, U.C.A. 1953, which defines fornication and specifies the punishment therefor, all offenses dealt with in the chapter are made felonies. Sections 76–53–8 to Section 76–53–12 deal with pandering and prostitution and the incidents related thereto. Section 76–53–10 specified a wide range of acts pertaining to the soliciting or securing patronage for prostitution as well as the procuring of females for the purpose of prostitution. All of the acts pertaining to pandering and prostitution have been made punishable as felonies.

We are of the opinion that the State by enacting comprehensive and complete laws pertaining to sexual offenses has pre-empted that field.[2] It does not appear that the State intended that municipalities deal with these offenses except in those areas pertaining to prostitution where the legislature had made specific grants of authority to municipalities as set forth above.

It is elementary that municipalities are limited by express grants of power from the legislature or as necessarily implied from such grants.[3] It appears that the ordinance we have under consideration goes beyond the grant of any legislative authority granted to the City and is therefore invalid. It must be conceded that the legislature did not intend to grant to cities the authority to prohibit acts as misdemeanors which the State has denounced as felonies.

1. 42 Am.Jur. p. 260.
2. 37 Am.Jur. p. 791; State v. Anderson, 40 N.J.L. 224.
3. American Fork City v. Robinson, 77 Utah 168, 292 P. 249; Salt Lake City v. Sutter, 61 Utah 533, 216 P. 234; Wadsworth v. Santaquin City, 83 Utah 321, 336, 28 P.2d 161.

Our decision respecting the ordinance will in no way hamper the police in dealing with vice as it is the duty of the police officers to enforce State law as well as municipal ordinances.

In view of our decision above it is unnecessary to discuss the other contentions of the appellant.

The case is reversed and the District Court is directed to dismiss the complaint.

CALLISTER and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. I cannot think of a better way to prohibit the keeping of disorderly houses than by drying up the source of revenue, and I think Section 10–8–41, U.C.A.1953, which empowers the city to suppress or prohibit the keeping of disorderly houses, authorizes the ordinance in question.

I would affirm the conviction.

CROCKETT, Chief Justice (dissenting).

I agree with the dissent of Justice ELLETT, adding this further comment:

It is easy enough to criticize legislative enactments for lack of certainty, but it is something else to draw them with such specificity that one charged with violation, or his lawyer engaged for that purpose, cannot ignore the central core of the intended meaning and, by pointing to the outer fringes, find some uncertainty. I think if the whole ordinance is viewed together, its purpose and the conduct denounced is sufficiently clear that it could be understood and given effect both as to obedience and enforcement by persons of ordinary intelligence, desiring to do so. To spare further extenuation here as to presumptions of validity and the reluctance courts should have in striking down legislation see my concurring opinion in Jones v. Logan City, 19 Utah 2d 169, 428 P.2d 160, and authorities therein cited.