487 P.2d 849

The **MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation et al., Plaintiffs and Appellants,**

v.

**OGDEN CITY, a body corporate and politic under the laws of the State of Utah, Defendant and Respondent.**

No. 12310.

Supreme Court of Utah.

Aug. 3, 1971.

[black rectangle redactions]

David E. Salisbury, and Alan F. Mecham, of. Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for appellants.

Jack A. Richards, and Carl T. Smith, Ogden, for respondent.

Jack L. Crellin, and Roger F. Cutler, Salt Lake City, for Salt Lake City Corp., amicus curiae.

TUCKETT, Justice.

The plaintiffs filed their complaint in the court below seeking a decree declaring that certain taxing ordinances adopted by the defendant city are invalid.

The matter was submitted to the district court on an agreed statement of facts, and those pertinent and necessary to an understanding of the case are as follows: The Mountain States Telephone and Telegraph Company operates a telephone system in Ogden City and elsewhere. Mountain Fuel Supply Company operates a gas supply system. in Ogden City and elsewhere. Utah: Power & Light Company operates an electrical power system in Ogden City and elsewhere. At prior times the defendant Ogden City by separate ordinances had granted franchises to each of the plaintiffs for periods of 25 to 50 years. Each ordinance granting the franchises provided that the plaintiffs were to pay to the city two per cent of the utility gross revenue derived from sales within the city limits. Each ordinance contained a provision setting forth that such payments were "in lieu" of all other. taxes, charges and impositions upon the revenue of the utility company. The plaintiffs accepted the terms of the franchise ordinances within the time· specified in each.

On August 1, 1968, the city adopted an ordinance which imposed an additional tax against each of the plaintiffs which provided for an additional two per cent of the gross revenue of each plaintiff. A subsequent ordinance extended the additional tax.

The new tax was imposed upon the plaintiffs but not upon the other taxpayers.

The plaintiffs attack the validity of the ordinance upon two grounds: (1) the franchises granted by the city to the plaintiffs and the acceptance of the conditions thereof by the plaintiffs formed contracts, and that the levy of additional taxes in violation of the "in lieu" provisions of the contracts impaired the obligation of each contract in violation of the provisions of· the Constitution of the United States and the Constitution of Utah; (2) the revenue ordinance is invalid in that it applies only to the plaintiffs and is therefore discriminatory.

■ In dealing with the plaintiffs' first contention that the subsequent revenue ordinance of Ogden City impaired the obligations of the prior contracts we are first faced with the problem of determining whether or not the city was authorized to enter into contracts which would limit the city's power to assess and collect taxes. At the outset we must make a determination of whether the Constitution and statutes of Utah give a municipality the power to barter away its power to raise revenue by taxation. Cities are creatures of the legislature and can exercise no power except that granted. We must first determine whether Ogden City was expressly granted the right to enter into the "in lieu" provisions of the ordinances granting to the plaintiffs franchises to carry on their separate services within the limits of the city. We find no specific provision in the Constitution nor the statutes dealing with franchises, nor have the parties herein called our attention to any such provisions. The power of a city to grant the franchises must emanate, if at all, from the provisions of Section 10–8–14, U.C.A.1953, which provides as follows:

They may construct, maintain and operate waterworks, gas works, electric light works, telephone lines or street railways, or authorize the construction, maintenance and operation of the same by others, * * *.

The language of the statute contains no grant of authority to the city to enter into any contract dealing with taxation. The only other statute dealing with the powers of cities to levy taxes is Section 10–8–80, U.C.A.1953, which provides:

They may raise revenue by levying and collecting a license fee or tax on any business within the limits of the city, and regulate the same by ordinance; * * *. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed.

We find no language in the statutes above referred to and quoted which might be construed as a grant of power to the city to enter into a contract which would exempt a person or corporation from the payment of taxes thereafter levied for a period of years. There being no grant of authority on the part of the city to enter into the "in lieu" provisions of the franchises, we are compelled to conclude that those provisions were beyond the powers of the city and therefore invalid.[1]

1. State ex rel. City of St. Paul v. St. Paul City Ry. Co., 78 Minn. 331, 81 N.W. 200; Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341; Elizabeth City v. Bank, 150 N.C. 407, 64 S.E. 189; Milwaukee Elect. R. & Light Co. v. Railroad Comm., 153 Wis. 592, 142 N.W. 491; Spoerl v. Township of Pennsauken, 14 N.J. 186, 101 A.2d 855, 47 A.L.R.2d 1177 (Headnote 4), 36 Am.Jur.2d, p. 730, § 7.

As a second assignment of error the plaintiffs contend that the ordinance by levying an additional tax on businesses supplying telephone, gas, or electric energy service is a discriminatory classification and applies only to the plaintiffs. The plaintiffs urge the view that the tax applies only to a small group of businesses which fall within the classification of public utilities. Other public utilities such as common carriers of passengers, freight or cargo are not included in the questioned ordinance. The plaintiffs comprise a distinct class of businesses within the public utility field which supplies to the public a service or product which is consumed or used by the public. We therefore conclude that the revenue ordinance which classifies plaintiffs as a separate class of public utility for the purpose of taxation is reasonable and not discriminatory.[2]

The decision of the court below is affirmed. No costs awarded.

ELLETT, and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I respectfully dissent. Ogden concedes that if the statute had given it the power, the contracts with these utilities would have been perfectly valid, except for the city's gratuity that they could not be for too long a period of time,[1]—but that is not its point on appeal. Its point on appeal is that the city "in the absence of express statutory authority from the legislature, may not contract away its power of taxation." This concedes that it could contract away its power of taxation *if* the legislature gives it that power. Such a conclusion pretty clearly is reflected in 173 A.L.R. 25, et seq., and the cases therein cited,—and that such contracts are enforceable under Art. I, Sec. 10, of the U. S. Constitution with respect to the interdiction against laws impairing the obligation of contracts.

The only point then, is whether Ogden had the power to enter into the contract. The main opinion's whole thrust is that it had no such power,—and that is the law of this case and the only law of this case— a conclusion with which I disagree as evidenced by this dissent. I think Ogden had such power under the statute for the following reasons:

Title 10–8–14, U.C.A.1953, as amended in Laws of Utah 1969, Ch. 28, Sec. 1, provides that cities may "authorize the construction, maintenance and operation * * * by others" of "gas works, electric light

---

2. Illinois Bell Tel. Co. v. Ames, 364 Ill. 362, 4 N.E.2d 494; In Re Opinion of the Justices, 84 N.H. 559, 149 A. 321; Salt Lake City v. Christensen Co., 34 Utah 38, 95 P. 523.

1. It is interesting to note that this court held enforceable a contract executed in 1888 wherein Salt Lake City agreed to furnish water to the Capitol Building and grounds forever, in S. L. City v. State, 22 Utah 2d 37, 448 P.2d 350 (1968).

works, telephone lines" etc. Invariably and necessarily such authorization involves a contract, with terms and conditions. As has been pointed out above, one of those conditions legally could be a provision for a certain percentage of gross sales "in lieu" of taxes,—or, as a substitute, which one could reason, is synonymous with "taxes,"—all of which would be protected against arbitrary increase under Art. I, Sec. 10, of the U. S. Constitution. This would be a condition that would seem to be not too different or onerous than terms requiring height of poles, placement of transformers, specifications for facilities, safety measures and the like. As the city grows, so would the "in lieu" amount.

The only question, as suggested above, is legislative authority, and I think our own cases would sanction the inclusion in such contract of that perfectly legal "in lieu" provision, as being a power necessarily or fairly implied in the city,—a doctrine we have enunciated so many times as to require but a few cases to be reported here. Perhaps the principle was as succinctly stated as any place else in American Fork City v. Robinson,[2] where we said:

> That the powers of the city are strictly limited to those expressly granted, to those necessarily or fairly implied in or incident to the powers expressly granted,

and to those essential to the declared objects and purposes of the corporation, is settled law in this state. Salt Lake City v. Sutter, 61 Utah 533, 216 P. 234.

The decision in the instant case certainly will not attract any new industry to any city in Utah by means used so extensively and successfully in the South, that encouraged new enterprise by extending a tax exemption for a specified time. Utah's economy sorely needs an incentive to attract new business and the "percentage of gross in lieu of taxes" formula is an attractive one for those who might have risk capital for new business. Besides, it appears to this writer that defendant indulged in an unconscionable procedure by becoming signatory to a sacred contract, only to renege when it deemed it convenient, saying that now that we need money, we were illegal. This sort of unilateracy does not lend itself to respect for the law, and breeds suspicion in the minds of the citizens when they have occasion to do business with public officials. This case can do little else but provoke hesitation on the part of utilities or others having risk capital, in dealing with cities, when the former now must realize that any expansion in their investment may prove fruitless and perhaps a losing proposition when they know that the promises of municipalities are not worth

---

2. 77 Utah 168, 292 P. 249 (1930); Stevenson v. S. L. City Corp., 7 Utah 2d 28, 317 P.2d 597 (1957); Salt Lake City v. Allred, 19 Utah 2d 254, 430 P.2d 371 (1967).

the paper upon which they are written. The largest city in this state has subscribed to such departure from good faith by joining Ogden with a so-called brief "amicus curiae," which is no "amicus curiae" brief at all, but simply a brief "amicus itself."

I would reverse this case and require the parties to the contracts to live up to their terms strictly and in good faith.

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.