The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, Plaintiff and Appellant,

v.

SALT LAKE CITY, a Body Corporate and Politic under the Laws, Defendant and Respondent.

No. 16000.

Supreme Court of Utah.

May 31, 1979.

---

David E. Salisbury, Gerald R. Miller and Chris Wangsgard of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiff and appellant.

Roger F. Cutler, Salt Lake City Atty., Salt Lake City, for defendant and respondent.

HALL, Justice:

Appeal from a Summary Judgment entered against plaintiff, the trial court having ruled that there exists no material issue of fact as to the constitutionality of Salt Lake City's franchise fee and utility revenue tax.

Plaintiff is a public utility which furnishes telephone service to customers generally throughout the State. For the privilege of using Salt Lake City roads and other public ways for its business purposes, plaintiff agreed to pay a 2 percent "franchise fee" determined from the gross revenues derived from sales within the City limits. In 1951, plaintiff requested rate authority from the Public Service Commission to pass through to its customers (on a pro-rata basis) franchise fees, license taxes and other local assessments. In 1952 the Public Service Commission granted the request [1] which included a provision that any increase in taxes could be passed on to the customers by merely filing with the Commission an amendment to the "Tax Adjustment Schedule." When first acted on by the Commission the only assessment by the City was

---

[1] The Commission's order was upheld by this Court in *Ogden City v. Public Service Commission*, 123 Utah 437, 260 P.2d 751 (1953).

the 2 percent franchise fee. In 1967 the City Commission passed an ordinance which levied a business revenue license tax (hereinafter referred to as "utility revenue tax") of 2 percent on utility companies,[2] in addition to the 2 percent franchise fee. When challenged as being discriminatory and unlawful, this Court upheld the tax.[3] In 1976 the utility revenue tax was increased from 2 percent to 4 percent, and in 1977 it was increased to 6 percent. The franchise fee and utility revenue tax now totals 8 percent which in the 1977–1978 fiscal year represented approximately 20 percent of the City's general revenue budget of $39,800,-000. Plaintiff has been paying the taxes under protest since July 1977.

This suit was filed as a challenge to the constitutionality and legality of these taxes. Plaintiff claimed that the taxes operate as an impermissible utility rate increase and further that other businesses which compete with plaintiff in the supply of telephone equipment are given an unfair advantage in not being required to pay taxes on their sales.

■ There is no dispute of material fact as to whether the tax is a utility rate increase which must be submitted to the Public Service Commission. This Court has previously affirmed the Commission's 1952 order which permitted local taxes to be passed on to the consumer.[4] The tax levied by the municipality is not a part of the rate base, but is a political decision of the City Commission. The commissioners are responsible to the voters, not the courts, for the tax rate imposed. Not only did plaintiff fail to challenge the order when it was rendered in 1952, but plaintiff itself requested it. There is no issue of fact as to

whether the tax can be construed as being a rate increase.

The allegation of unfair competition cannot be disposed of so easily. The City urges two alternative positions as to why they were entitled to summary judgment: (1) the decision and stipulation of 1971 has res judicata effect in that utility companies constitute a distinct class which may be dealt with differently from other classes; (2) the plaintiff is taxed at the same rate as its competitors.

■ Plaintiff is not barred nor estopped from bringing this suit in the face of the 1971 decision. First, the 1971 litigation dealt with taxes paid under a different enactment. The present suit deals with taxes which have accrued since 1977, all of which were paid under protest. Generally, in tax litigation, res judicata has no application in a suit challenging the propriety of a tax obligation accrued in tax periods subsequent to those at issue in the original litigation.[5] Second, and most important, by reason of recent decisions of the Federal Communications Commission (hereinafter F.C.C.) commonly known as the Interconnect cases, the factual situation in the area of telephone suppliers (and taxation thereon) has changed significantly. In 1968 the F.C.C. ruled[6] that federal tariffs governing the conduct of telephone utility companies could not prohibit the connection of telephones and switchboards manufactured by other companies to telephone networks used in interstate commerce. Subsequently, the Fourth Circuit Court[7] affirmed another F.C.C. ruling that telephone company tariffs governing interstate communication would be required to allow connection to the telephone lines of any terminal equipment which had been duly registered with

2. Also assessed against Mountain States Fuel Supply Company and Utah Power and Light Company.

3. *Mountain States Telephone & Telegraph Co. v. Ogden City*, 26 Utah 2d 190, 487 P.2d 849 (1971). Because the Ogden City case came for hearing prior to the Salt Lake City case, Salt Lake City appeared as amicus curiae. When the Court's ruling went against the utility companies' position in the Ogden case, they stipu-

lated to a dismissal with prejudice in the litigation against Salt Lake City.

4. Supra, footnote 1.

5. *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

6. *Carterfone v. AT&T*, 13 F.C.C.2d 420 (1968).

7. *North Carolina Utilities Commission v. F.C.C.*, 552 F.2d 1036 (4th Cir. 1977).

the F.C.C. The practical effect of such a ruling was that private companies were permitted to enter (for the first time) into the business of manufacturing and selling telephone equipment. At the time this Court decided *Mountain States Telephone & Telegraph v. Ogden City*,[8] utility companies had no competition and therefore could be treated as a distinct class. To the limited extent that competition in the area of the manufacture and sale of telephones is now permitted, plaintiff is not a "distinct class," and cannot be treated differently from other manufacturers or suppliers of equipment.

■ The only question therefore remaining to be answered is whether plaintiff is taxed at the same rate as its competitors. In 1977 (prior to the filing of this action), Salt Lake City passed the following ordinance:[9]

There is hereby levied upon the business of every person or company engaged in the business in Salt Lake City, Utah, of supplying telephone service, gas or electric energy service in competition with public utilities, an annual license tax equal to six percentum of the gross revenue derived from the sale and use of such competitive services delivered from and after November 1, 1977, within the corporate limits of Salt Lake City.

'In competition with · public utilities' shall mean to trade in products or services within the same market as a public utility taxed under section 14 of this chapter.

On its face, the taxing scheme is therefore constitutional and not in violation of equal protection.

■ The ordinance is also challenged *as applied*, and herein lies the dispute of material fact which precludes a summary judgment.[10] The complaint includes the following allegations:

20. From and after the enactment of this said amended § 20–3–14.1, Defendant Salt Lake City has failed or refused to collect, from persons and/or companies engaged in the business of supplying telephone service in competition with plaintiff, the 6 percent annual license tax which § 20–3–14.1 purports to impose.

21. Defendant's failure or refusal to collect the said tax has caused plaintiff to be taxed disproportionately, and without rational basis, in comparison with businesses similarly situated all in violation of the requirements of § 10–8–80, Utah Code Annotated, and in violation of the requirements of the Constitutions of the State of Utah and the United States.

22. Defendant's failure to tax plaintiff uniformly with other businesses similarly situated has, therefore, rendered the said amended § 20–3–14, as applied to plaintiff in this case, illegal, unconstitutional, and void.

■ Plaintiff has therefore alleged a discriminatory application of an otherwise constitutional tax.[11] Defendant claims the tax is imposed upon all those within the designated class. There exists therefore a genuine factual issue which must be tried before the validity of plaintiff's cause of action may be determined. This is so notwithstanding our holding that to recover for the discriminatory application of a taxing statute a complainant must show a systematic and intentional failure to enforce the statute equally.[12]

The summary judgment is reversed and remanded for trial as to whether there is a discriminatory application of the ordinance. Costs to plaintiff.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

8. Supra, footnote 3.

9. Revised Ordinances of Salt Lake City, 1965, 20–3–14.1.

10. Rule 56, Utah Rules of Civil Procedure.

11. When a license tax " 'becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible.' " *Salt Lake City v. Utah Light & Railway Co.*, 45 Utah 50, 142 P. 1067 (1914) quoting Cooley on Taxation. See also U.C.A.; 1953, 10–8–80.

12. *Thiokol Chemical Corporation v. Peterson*, 15 Utah 2d 355, 393 P.2d 391 (1964).