SALT LAKE CITY v. UTAH LIGHT & RAILWAY CO.

No. 2591.   Decided August 10, 1914 (142 Pac. 1067).

1.   CONSTITUTIONAL LAW—CONTRACT RIGHTS—IMPAIRMENT. An ordinance of Salt Lake City provided that it should be unlawful for any corporation to engage in or carry on the business of generating, furnishing, distributing, or selling electricity for light, heat, fuel, or power purposes and using meters without first procuring a license, imposing a license tax of one dollar a year for each meter so used. *Held*, that such ordinance merely imposed a license or occupation tax on persons or corporations within its scope, and did not violate the contract franchise rights of such persons under franchises authorizing them to use the streets and distribute and sell electricity, but not withdrawing from the city the right to impose a license or occupation tax. (Page 55.)

2.   LICENSES—OCCUPATION TAXES—UNIFORMITY—CLASSIFICATION. An ordinance of the city of Salt Lake provides that corporations engaged in generating and selling electricity and "using meters" shall obtain a license therefor and pay a license tax amounting to one dollar a year for each and every meter used. *Held*, that the use of meters was not a valid basis of classification, and that the ordinance was invalid for lack of uniformity in relieving from liability such concerns as furnished and sold electricity not measured by meters, and this regardless of whether it was shown that such concerns were not otherwise subjected to a similar tax. (Page 60.)

3.  MUNICIPAL CORPORATIONS—STATUTES—VALIDITY—NONUNIFORMITY.
    While the question of what is actually being done under a
    statute or ordinance attacked for nonuniformity is material
    and important, yet the test of validity is not alone determined
    ·by what is actually being done, but what is authorized to be
    done thereunder must also be considered in determining the
    validity. (Page 64.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

Action by Salt Lake City against the Utah Light & Railway Company, a corporation.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

*P. L. Williams, G. H. Smith* and *H. B. Thompson* for appellant.

*H. J. Dininny, Aaron Meyers* and *W. H. Folland* for respondent.

FRICK, J.

This proceeding was initiated in the City Court of Salt Lake City. The city there filed a complaint in which . it charged the appellant with having violated the provisions of a certain ordinance. Appellant was found guilty in that court, and appealed the case to the District Court of Salt Lake County, where it was again found guilty, and from the latter conviction it now appeals to this court upon the ground that the ordinance in question, for the reasons hereinafter stated, is invalid. The ordinance reads as follows:

"Section 1. It shall be* unlawful for any person, firm, association or corporation to engage in, conduct, operate, carry on, or manage the business of generating, furnishing, distributing or selling electricity for light, heat, fuel or power purposes, and using meters to gauge or measure the same, without first procuring a license so to do.

"Sec. 2. Persons required to pay license under the provisions of section 1 of this ordinance, shall, on or before the

first day of January of each year, furnish the license assessor of Salt Lake City, a statement under oath of the number of meters used by said person for the gauging or measurement of electricity as generated, furnished, distributed or sold within Salt Lake City during the preceding year, and shall pay to Salt Lake City annually, in advance, the sum of one ($1.00) dollar for each and every meter so used as aforesaid.

"Sec. 3. Any person, firm, association or corporation violating any provision of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than $25.00, nor more than $299.00."

The cause was submitted to the district court upon an agreed statement of facts, which in substance are as follows:

That on the 20th day of May, 1893, Salt Lake City granted to the Salt Lake & Ogden Gas & Electric Light Company a franchise or permission "to use and occupy the streets, lanes and alleys and public places of Salt Lake City for the purpose of conveying * * * electrical current * * * by means of wires or conductors placed above said streets, to be used for electric lighting and * * * furnishing power and other purposes to the inhabitants and property owners and users in said city." In said franchise the city also granted said company "the privilege of erecting and maintaining in the streets, lanes and alleys of said city, poles and attaching thereto and extending and maintaining thereon wires or conductors for the purpose of transmitting electrical current within the limits of said city to the inhabitants thereof."

In December, 1893, Salt Lake City granted to one S. F. Walker a franchise in which said Walker was given "the privilege of erecting and maintaining in the streets, lanes, alleys and public places of said city, poles and attaching thereto and maintaining thereon wires and conductors for the purpose of transmitting electrical current within the limits of said city to the inhabitants thereof."

In May, 1897, Salt Lake City also granted a franchise to the Pioneer Electric Power Company, the privilege "to construct, erect and maintain a single line of poles in the streets, lanes, and alleys of Salt Lake City, with the necessary wires

and other proper appliances thereto attached for the distribution and conveyance of electricity and gas throughout said city to be used by the inhabitants thereof for light, heat, power and other industrial and commercial purposes.''

In December, 1903, the city council of Salt Lake City passed an ordinance in which all of the foregoing franchises are recited, and in which ordinance the franchises and privileges aforesaid are all vested in the Utah Light & Power Company. It was also declared in said ordinance that the life of each of said franchises shall be fifty years. Prior to August, 1905, all of the foregoing franchises and privileges had been assigned and transferred to the Utah Light & Railway Company, the appellant here, and said company succeeded to all of the rights and privileges in said franchises specified. On the 30th day of August, 1905, appellant being desirous of having extended the life of said franchises and of having the transfers thereof to it ratified and approved by said city, therefore, pursuant to such request, the city council of Salt Lake City by ordinance duly passed and approved, ratified and confirmed the transfers of said franchises and privileges in the Utah Light & Railway Company, the appellant, and it was provided in said ordinance that ''the life, validity, and term of each and every one of said franchises is hereby extended and ordained to be fifty years from July 1, 1905.'' In consideration for the granting of the franchises and privileges aforesaid, each one of the grantees agreed to furnish to Salt Lake City certain lights and power free of charge. Appellant, among other things, also agreed to furnish to the city certain lights and power free of charge. The lights so furnished to the city at commercial rates for the year 1910 would have cost $21,993.90, for the year 1911, $23,277.82, and for the year 1912 (estimated) $21,744.25. Appellant also pays an ad valorem tax upon its property the same as other property owners. In 1910 it paid such taxes to the state amounting to $11,152.76, to the county, $9,756.20, and to the city, $8,786.65. It was also provided in said ordinance that appellant should not charge or exact pay for light and power furnished to its patrons an amount in excess of the prices fixed in said ordinance. As part consideration for said fran-

chises and privileges appellant also conveyed by proper deed of conveyance to Salt Lake City certain real estate and water and power rights. The deed conveying said property and rights contained the following condition:

"This deed is given and made on the express condition that the privileges and rights, restrictions and limitations mentioned in said ordinances and each and every one of them shall be valid and binding upon said city, and shall not be impaired or in any way modified or changed."

It was further stipulated that the ordinance in which the franchise, privileges, and rights were granted and ratified contained the following provisions:

"In consideration of the premises, Salt Lake City agrees and ordains that it will not·by ordinance or resolution make any rules or regulations in regard to the price of lighting different from the prices therefor herein named, nor shall the said Utah Light & Railway Company be obliged to furnish light for any one for less than herein named."

What the value of the franchises which were granted to appellant was does not appear. It was also stipulated that there are other persons who are "engaged in the business of generating and selling electricity for light and power purposes within the corporate limits of Salt Lake City, but that said persons were not required by law or ordinance to use meters to gauge or measure the same." Further that the electric meter is a practical and tested device used for the purpose of measuring or ascertaining the exact amount of current that is used by consumers. Appellant also has a franchise from Salt Lake City to operate a street car system, and as a consideration for said franchise it pays to said city annually the sum of twenty-five dollars for each car operated over its lines in addition to the ad valorem taxes paid as aforesaid. The cost of lights and power that appellant is required to furnish the city free of charge may still increase considerably during the life of the franchise.

While the foregoing is a very condensed statement of the facts stipulated, yet we think it is sufficient to enable the reader to understand the points hereinafter decided.

At the outset it should be noted that there is no express

provision in any of the so-called franchises, or in the ordinances under which appellant claims the right herein referred to whereby Salt Lake City has either bartered, granted, or surrendered its right to impose any license or occupation tax upon appellant which may be permitted under our Constitution or statutes. Upon the question of imposing taxes, both the franchises and the ordinances are silent. Appellant, however, in substance contends that the ordinance in question is invalid as against it for the reason that, in obtaining the franchise as aforesaid, it already has paid for the privilege of conducting or carrying on the business sought to be taxed in said ordinance; that the granting of said franchises constitutes a contract between it and Salt Lake City; and hence the imposition of said tax is in violation of the provisions of said contract and impairs the obligations thereof. A large number of cases are cited by appellant's counsel which they insist support the foregoing contentions. Among those cited are the following: *Boise Water Co.* v. *Boise City,* 230 U. S. 84; 33 Sup. Ct. 997; 57 L. Ed. 1400; *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558; 20 Sup. Ct. 736; 44 L. Ed. 886; *City of St. Louis* v. *Western Union Tel. Co.* (C. C.), 63 Fed. 68; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650; 6 Sup. Ct. 252; 29 L. Ed. 516; *American Smelting Co.* v. *Colorado,* 204 U. S. 103; 27 Sup. Ct. 198; 51 L. Ed. 393; 9 Ann. Cas. 978; *Hot Springs El. L. Co.* v. *City of Hot Springs,* 70 Ark. 300; 67 S. W. 761; *City of Los Angeles* v. *L. A. C. W.,* 61 Cal. 65.

In our judgment none of the foregoing cases, nor any cited by counsel, decides the question involved in this appeal. It is true that in those cases it is held that where a city enters into a contract with either a natural or artificial person whereby such city exacts a rental or other charge for the right to erect poles or other instrumentalities in the streets and public places of such city for the purpose of permitting such person to carry on or conduct a certain business or calling in said city in which such person deals with such city and with its inhabitants, or with either or both, such city may not, after entering into the contract, impose new

duties or burdens, or exact additional compensation, for the
doing of the things specified in the contract. It is also held
in at least some of those cases that a municipal corporation,
as an arm of the state government, for a consideration re-
ceived by it, may barter away or surrender the right to im-
pose certain taxes, but, in order to accomplish that result,
the right must be surrendered or bartered in express terms.
The right to impose taxes being one of necessity, and being
a prerogative of the sovereign power, is never taken away
by implication or by mere construction, but, in order to be
binding upon the sovereignty, must be surrendered in ex-
press terms. Further, when it is doubtful whether the right
has been bartered or surrendered, the right still prevails.
The great, we may say the overwhelming, weight of author-
ity, both state and federal, is to that effect. There is abso-
lutely nothing in either of the franchises or the ordinances
referred to in the stipulation of facts, and under which ap-
pellant claims, whereby Salt Lake City has in any way or
to any extent bound itself not to impose any and all taxes
that are authorized by our Constitution or statutes. Nor does
the tax here in question come within what is denominated an
"additional burden" or "additional compensation" in the
cases before referred to. This, we think, is easily demon-
strated. Suppose Salt Lake City had owned and operated
the electric light plant which is now operated by appellant,
and had entered into a contract of sale with appellant where-
by said plant was sold for its full value, and in connection
with such sale the city had granted to appellant the right,
franchise, or privilege to use and maintain the poles and
other instrumentalities used in connection with said plant in
the streets and public places of said city for the purpose of
distributing and selling electric lights and power just as ap-
pellant is now doing, could it be contended on any reasonable
hypothesis, that by entering into such a contract the city
was thereby obligated to refrain from imposing any and all
legal taxes upon the property sold or from exacting a proper
occupation or license tax from appellant? Again, assuming
that appellant had exercised the right of eminent domain
and had condemned and paid for the right to use the streets

and other public places of the city for its poles and other instrumentalities for the purpose of distributing and selling electricity for light and power purposes (that is, that, by virtue of the exercise of the right of eminent domain, it had obtained and paid for the franchise), could not the city impose any and all proper taxes upon such right, privilege, or franchise, including an occupation or license tax? It seems to us that no one can doubt its legal right to do so. Why, then, may it not do so under the franchises and ordinances involved here without violating any of their provisions and without in any way impairing any of the obligations that it has thereby assumed? We think that both upon principle and authority its legal right to impose taxes as aforesaid cannot be questioned. The question has frequently been considered by the Supreme Court of the United States. A comparatively recent and a very instructive case upon the question is the case of *St. Louis* v. *United Railways Co.*, 210 U. S. 266, where at page 274, (28 Sup. Ct. 630, 632, 52 L. Ed. 1054), Mr. Justice Day, in speaking for the court, says:

"An examination of the cases in this court shows that it is not sufficient that a street railway company has agreed to pay for the privilege of using the streets for a given term, either in a lump sum, or by payments in installments, or percentages of the receipts, to thereby conclude the municipality from exercising a statutory authority to impose license fees or taxes. This right still exists unless there is a distinct agreement, clearly expressed, that the sums to be paid are in lieu of all such exactions."

The Justice then reviews a number of cases and cites those reviewed and others in support of the doctrine announced by him, and on page 278 of 210 U. S., on page 634 of 28 Sup. Ct. (52 L. Ed. 1054), continues as follows:

"No ordinance contains any express relinquishment of the right to exact a license fee or tax. It is true that the city in granting the right to use the street by special ordinance and in exercising by general ordinance the right conferred in the charter to impose a license tax upon cars is dealing with rights and privileges somewhat similar, but nevertheless essentially separate and distinct. In the special ordinances the city is making an arrangement with the railway company to confer the right to use the streets in con-

sideration of certain things the company is to do by way of opera-
tion and otherwise, including, it may be, payment of fixed sums or
a proportion of receipts in consideration of the rights and privi-
leges conferred.  The city does this by virtue of its power to grant
rights and privileges and control their exercise in the streets of
the city, power expressly conferred in the charter of the city.  In
the fixing of a license tax upon all companies alike for the privi-
lege of using cars in the city, it is exerting other charter powers.
It makes provisions uniformly applicable to all persons or compa-
nies using street cars.  It is a revenue measure equally applicable
to all coming within its terms.  We do not perceive that the exer-
cise of the power to grant privileges in the streets in making terms
with companies seeking such rights, in the absence of plain and
unequivocal terms to that effect, excludes the city's right to impose
the license tax under the power conferred for that purpose.  How,
then, stands the case?  Is it true that because the city has re-
quired and the company has agreed to pay certain sums fixed in
amount, or based on the receipts, for the use of the streets, it has
thereby deprived itself of the power to exercise the authority ex-
isting at the time the ordinances were passed to license street rail-
way cars, and in the exercise of that power to charge a license fee
or tax?"

On page 280 of 210 U. S., on page 634 of 28 Sup. Ct. (52
L. Ed. 1054), it is said:  .

"It seems to us that this case is virtually decided by the rule
laid down in *Railway Co.* v. *New Orleans*, 143 U. S. 192; 12 Sup.
Ct. 406; 36 L. Ed. 121, *supra*, which holds that, because a street
railway company has agreed to pay for the use of the streets of
the city for a given period, it does not thereby create an inviolable
contract which will prevent the exaction of a license tax under an
acknowledged power of the city, unless this right has been spe-
cifically surrendered in terms which admit of no other reasonable
interpretation."

In 5 Dillon, Mun. Corp. (5th Ed.), section 1392, the au-
thor, in referring to the subject under now under considera-
tion, says:

"An exclusive municipal grant to such a railway company to
use the streets in the municipality does not exempt it from mu-
nicipal control, nor deprive the municipal authorities of the right,
otherwise existing, to require the company to pay a license tax."

In note 2 to the section aforesaid, page 2419, it is said:

"The fact that a street railway company has agreed to pay for
the privilege of using the streets for a given term, either in lump

sum or by payments in installments or percentages of the receipts, does not prevent the municipality from exercising statutory authority to impose license fees or taxes"—citing a number of cases from the Supreme Court of the United States.

The following cases fully support the foregoing quotations: *New Orleans, etc., Co.* v. *New Orleans,* 143 U. S. 192; 12 Sup. Ct. 406; 36 L. Ed. 121; *Memphis Gas Co.* v. *Shelby County,* 109 U. S. 398; 3 Sup. Ct. 205; 27 L. Ed. 976; *Newport News, etc., Co.* v. *Newport News,* 100 Va. 157; 40 S. E. 645; *Nebraska Tel. Co.* v. *Lincoln,* 82 Neb. 59; 117 N. W. 284; 28 L. R. A. (N. S.) 221; *Lincoln Tr. Co.* v. *City of Lincoln,* 84 Neb. 327; 121 N. W. 435.

The last case cited approves and follows the preceding case from Nebraska.

Neither is there any question concerning the right of Salt Lake City to impose an occupation or license tax. *Salt Lake City* v. *Christensen,* 34 Utah 38; 95 Pac. 523; 17 L. R. A. (N. S.) 898, and cases there cited. Again both the Constitution and the statutes of this State authorize the imposition of such taxes. Article 13, Section 12, of our Constitution provides:

"Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax based on income, occupation, licenses or franchises."

Comp. Laws 1907, section 206, subd. 87, empowers the city authorities—

"to raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city, and regulate the same by ordinance. *All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."* (Italics ours.)

It is not contended (indeed, it could not well be) that the constitutional or statutory provisions referred to are applicable to or enforceable against appellant, unless they are made inoperative by reason of the franchises and ordinances to which we have referred. That these provisions have not been made inoperative for the reasons aforesaid, we think we have already sufficiently demonstrated. We are of the opinion, therefore, that the contentions of the appellant as stated

above cannot prevail.   While we feel confident of the sound-
ness of our conclusions upon this point, yet we have felt less
hesitancy in asserting them for the reason that the question
just considered is one upon which the Supreme Court of the
United States is authorized to speak the final word, and,
therefore if we have erred, and appellant feels aggrieved,
the error may be corrected by that court either in this pro-
ceeding or some other.

Appellant's counsel, however, also insist that the ordinance
is invalid for the reason that it does not operate upon all
those who may be engaged in the business of distribut-
ing and selling electricity in Salt Lake City, and for
that reason it also offends against the fourteenth amend-
ment of the federal Constitution in that it denies to appel-
lant "the equal protection of the laws." Article 1, Section
24, of our Constitution, provides: "All laws of a general na-
ture shall have uniform operation." We need not now inquire
whether a municipal ordinance comes within the purview of
the foregoing provision or not.   It is sufficient for the pres-
ent for us to point out that the very statute which confers the
power upon the city to exact a license tax to raise revenue
also imposes the limitation that "all such license fees and
taxes shall be uniform in respect to the class upon which they
are imposed."   If the ordinance in question is contrary to
the foregoing provision, the ordinance cannot stand, since
the city derives all of its power to enforce a license tax from
the statute aforesaid.

Does the ordinance offend against the statute?   We think
it does, indeed, we see no escape from such a conclusion.   The
ordinance certainly does not affect all alike who are or may
be engaged, or who at any time may engage, in the business
of selling and distributing electricity for lighting and power
purposes by the same means that appellant is now doing,
provided they do not use meters.   It is expressly stipulated
that there are "various persons engaged in the business of
generating and selling electricity for light and power pur-
poses within the corporate limits of Salt Lake City"; and it
is further stipulated "that said persons are not required by
law or ordinance to use meters to gauge or measure the

same.'' The ordinance in question makes it unlawful for persons or corporations only who may ''conduct, operate, carry on or manage the business of ·generating, furnishing, distributing or selling electricity for light, heat, fuel or power purposes and using meters to gauge or measure the same, without first procuring a license so to do.'' The ordinance, therefore, makes such as are engaged in the business aforesaid, and who are *using meters,* and none others, liable for the tax. At first blush one is impressed with the thought that the ordinance was intended to tax the use of meters rather than the business. We shall, however, accept the city's construction, and in doing so hold that the ordinance imposes a license tax upon the business, and· the meters are an incident only and are referred to because they are the means by which the amount of the tax to be paid is determined. But in limiting the tax to those who use meters for the purpose mentioned in the ordinance destroys its uniformity. It is not conclusive here that the city may, for the purpose of taxation as well as for some other purposes, indulge in reasonable classification. This, we have already held, may be done. *Salt Lake City* v. *Christensen, supra.* The statute says that all taxes, if any, ''shall be uniform in respect to the class upon which they are imposed.'' This is imperative. Can the business specified in the ordinance be so classified that some of those who are engaged therein may be required to pay the tax, while others who are conducting the same business are not required to do so? Clearly not. We have pointed out in *Salt Lake City* v. *Christensen, supra,* how merchants, occupations, and business enterprises generally may be classified for the purposes of taxation, but neither that case nor any other, so far as we are aware, permits a classification by means of which some are taxed while others who are engaged in the same business are exempt. It is also shown in the case just referred to that classification is sometimes necessary to establish uniformity; that is, to bring about equality as nearly as that may be done in applying the various methods of taxation authorized by law. It is too manifest to require argument, however, that the ordinance in question in no way effectuates such a result or is intended for

such purpose. Indeed, the ordinance must of necessity destroy uniformity and equality for the very reason that it excludes A while it includes B, both of whom may be engaged in the same business in the same territory and under the same conditions. Such a result is the very thing the statute aims to prevent. That such ordinances or laws cannot prevail where uniformity and equality must be observed is made very clear in the following cases: *Cotting* v. *Kansas City S. Y. Co.*, 183 U. S. 79-102 et seq.; 22 Sup. Ct. 30; 46 L. Ed. 92; *State* v. *Haun*, 61 Kan. 146; 59 Pac. 340; 47 L. R. A. 369; *State* v. *Gardner*, 58 Ohio St. 599; 51 N. E. 136; 41 L. R. A. 689; 65 Am. St. Rep. 785; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; 30 Sup. Ct. 287; 54 L. Ed. 536; 17 Ann Cas. 1247; *State* v. *Wright*, 53 Or. 344; 100 Pac. 296; 21 L. R. A. (N. S.) 349; *State* v. *Sheriff of Ramsey County*, 48 Minn. 235; 51 N. W. 112; 31 Am. St. Rep. 650; 1 Cooley on Taxation (3d Ed.) 260.

Judge Cooley, in referring to the question now under consideration, at page 260, says:

"A license tax might not be unjust, though laid upon a single occupation, provided that it was so laid that none who followed that occupation escaped it. Let it reach all of a class, either of persons or things; it matters not whether those included in it may be one or many, or whether they reside in any particular locality or are scattered all over the state. But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible."

In *State* v. *Wright, supra*, the Supreme Court of Oregon, in speaking of classification and to what extent it is permitted, at page 349 of 53 Or., at page 298 of 100 Pac. (21 L. R. A. [N. S.] 349), says:

"It is true a state may impose a tax on, or require a license from, persons engaged in certain callings or trades, without being bound to include all persons or all property that may be legitimately taxed for governmental purposes. (Citing cases.) But the classification must be on some reasonable basis, and the law, when enacted, must apply alike to all engaged in the business or occupation. Thus an act requiring a license from plumbers is void as discriminatory if it exempts certain plumbers from its operation."

Uniformity and equality, so far as those elements can be attained, are always to be the aim and guide of those upon whom is conferred the authority to impose or assess taxes. When once inequality is permitted, and it is established that the burden of taxation may be unequally distributed under governmental authority, the government permitting it becomes a farce and is entirely unworthy of either our respect or support. So long as the burdens of taxation are distributed equally, they cannot well become oppressive, since they are imposed upon those constituting the community at large, and the community as a whole always possesses the power to relieve itself in one way or another. When, however, the burdens are imposed upon only a part less than the majority, or a smaller fraction, the burden may easily become destructive, and, if not destructive, at least unjustly oppressive. Equality, therefore, becomes a safeguard against, if not an absolute prevention of, excessive and oppressive taxation. Where, however, those who, for the time being, are intrusted with the power to pass laws or ordinances by which taxation may be imposed invade the rule of equality prescribed by the paramount law, it is the duty of the courts, when proper application is made, to declare such law or ordinance void, and thus arrest the evil at its inception. In doing so the courts are not, as it is sometimes popularly assumed, interfering with the law-making power, but are merely compelling that power to observe and obey the paramount law. For the reasons last stated, we are required to declare the ordinance in question invalid.

Counsel, however, also insist that the ordinance is void for uncertainty, and that it permits appellant's property to be taken without due process of law. While it is true that the ordinance is very inartificially drawn, and that at first blush it seems doubtful whether it is intended to tax the use of meters or the conducting of the business of generating, distributing, and selling electricity for light, power, and other purposes, yet, in view that we have held the ordinance void for other reasons, the objection upon the ground of uncertainty can easily, and no doubt will, be obviated by the city

authorities in case they shall pass a new ordinance to conform to the statute.

Nor is it necessary to specially discuss or consider the question of ''due process of law,'' since that question has already been disposed of contrary to appellant's contentions in what we have said upon the question of the right of the city to impose a license tax, and we there suggested that, if we are in error in deciding that question appellant has its remedy by appeal to the court of last resort.

Counsel for the city, with much vigor, contend that the ordinance is not vulnerable to the objection that it is discriminatory because it does not appear that the others who, it is stipulated, are engaged in the business of generating, distributing, and selling electricity for light, power, and other purposes in Salt Lake City are not taxed by some other ordinance. This, it seems to us, is merely begging the question. Had it not been expressly stipulated that there are others who are engaged in the business specified in the ordinance who do not come within its provisions, the ordinance would still have been vulnerable to the objection that it lacks uniformity.

While the question of what is actually being done under a law or ordinance is always material and at times very important, yet what is done is not the only test of validity. When a law or ordinance is assailed upon the ground     **3** that it offends against some other paramount law, the question ordinarily is not limited to what is, but goes to the extent of what may, be done under the law? If, as in the case at bar, an ordinance taxes some of a class, while it exempts others of the same class, the ordinance is vulnerable to the objection whether there are others within the class who at a particular time are engaged in the particular business or not. It is sufficient that others within the same class may engage in the business without paying the tax, that others within that class are required to pay, and that it is naturally and reasonably to be expected that others will engage in the business at some time, or that they may do so at any time. In *Southern Ry. Co.* v. *Greene,* 216 U. S. 417; 30 Sup. Ct. 287; 54 L. Ed. 536; 17 Ann. Cas. 1247, it is held sufficient that

it is averred in the complaint, and not denied that others are engaged in the same business within the state to make the statute. discriminatory. We are not at all impressed with counsel's contention, and are certainly not inclined to hold the ordinance unassailable upon such a narrow ground as the one last suggested. There are other reasons why this contention is not sound, but it is not necessary to state them at this time.

For the reasons stated, the judgment is reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to set aside the judgment and to dismiss the complaint.

McCARTY, C. J., and STRAUP, J., concur.