Peter WHITMER, Plaintiff
and Appellant,

v.

CITY OF LINDON, a Utah municipal corporation, E. Ray Brown, Wilma Taylor, Don Peterson, Scott J. Cullimore, Noal T. Greenwood, M. Dean Blackhurst, Richard D. Draper, Jerald I. Hatch, James A. Dain, Steven L. Smith, Randy L. Childs, Mark L. Walker, John Does I to X, Defendants and Appellees.

No. 960124.

Supreme Court of Utah.

July 29, 1997.

Peter Whitmer, Orem, Pro se.

Gordon Duval, Pleasant Grove, for City of Lindon.

DURHAM, Justice:

Plaintiff Peter Whitmer, a resident and owner of real property in Lindon City, appeals from a district court order denying his cross-motion for summary judgment and dismissing his claim in favor of defendant Lindon City (Lindon), a municipal corporation. We affirm.

At a public meeting in January 1992, the Lindon City Council enacted ordinance 1–92, containing policies and regulations governing a proposed pressurized secondary water system to be used for irrigation. Lindon maintains that this legislation was designed to reduce the cost, waste, and burden on the City's culinary water system created by the diversion of culinary water for irrigation. Lindon has experienced recent rapid growth, including the conversion of irrigated farmland to residences, which draw heavily on the culinary water supply. Prior to establishing the secondary water system, Lindon residents obtained water for irrigation exclusively through open canals administered by mutual irrigation companies. Property owners who did not own shares in these irrigation companies and therefore did not have access to irrigation canals relied upon Lindon's culinary water system for their outside watering. The recent growth in Lindon placed a demand on the culinary system that required the development of an efficient and viable secondary source of irrigation to ensure adequate culinary water for Lindon residents.

In 1991, Lindon contacted potential subscribers and proposed an agreement that committed the City to construct a secondary irrigation system and required residents who desired connection to the secondary system and owned shares in Lindon's mutual irrigation companies to transfer water shares to the City in an amount determined by the size of their property. Lindon proposed that Whitmer consider the agreement after identifying him as owning shares in the North Union Water Irrigation Company (North Union). In January 1991, plaintiff's wife, Cynthia Whitmer, signed this agreement. Lindon encouraged residents to commit to the secondary system and transfer their water shares to the City so that Lindon would have adequate water resources and could obtain state funding for the secondary system.

Lindon passed a bond resolution for the secondary water system in January 1992, which provided notice of a thirty-day period to contest the bond resolution. Under ordinance 10–93, Lindon adopted a water share transfer requirement and monthly user fee schedule applicable to all users, whether parties to the earlier agreement or not. These provided that if Lindon has sufficient water for its pressurized secondary system, it can waive the water share dedication and transfer requirement for nonshareholders and instead allow applicants to pay in an amount equal to the value of the required water stock.

Citing this provision, Whitmer requested a secondary water connection but refused to exchange his shares in North Union for that connection. Instead, Whitmer tendered a $750 cash payment for his connection. Lindon returned Whitmer's cash payment, notifying him that as a water share owner he must transfer his shares in North Union to connect to the City's secondary water system. In 1993, as Lindon completed construction of its secondary water system, it mistakenly connected Whitmer to the secondary system and began to bill him. Lindon later notified Whitmer of the mistaken connection

and refunded Whitmer's payments. Lindon also notified Whitmer by letter that to maintain his water connection he must relinquish his North Union shares to the City. In this letter, Lindon referenced ordinance 13.18.260, which provides, after notice of secondary water connection termination, a ten-day period for written appeals of proposed service terminations. Lindon's notice was dated August 19, 1993. Whitmer hand-delivered a notice of appeal to Lindon on September 7, 1993. After notifying Whitmer that his notice of appeal was untimely, Lindon terminated Whitmer's secondary water connection.

The trial court granted Lindon's motion for summary judgment and generally dismissed Whitmer's constitutional challenges.[1] Whitmer argues on appeal that Lindon's requirement that water shareholders transfer their water shares to the City in exchange for connection to the municipal secondary water system when those without water shares can pay cash for their connection is unlawful under the Utah and United States Constitutions. Whitmer contends that Lindon's statutory scheme effects an unconstitutional taking of his water shares, that as a water shareholder he is denied the equal protection and uniform operation of the laws, and that Lindon violated his due process rights in its procedure for terminating his secondary water connection.

All issues in this case present questions of law. We therefore review the trial court's conclusions for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). While considering the constitutionality of a statute, we will resolve reasonable doubts in favor of constitutionality. *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993). Moreover, where Whitmer bases his claims on both the United States and Utah Constitutions, because we can decide this case under the Utah Constitution, we need not reach questions of federal Constitutional law. *See City of Logan v. Utah Power &*

---

1. The only challenge not dismissed below concerned Lindon City ordinance 13.18.150, which required an owner who did not connect to the system and who did not surrender the required number of shares to do so when and if he or she transferred the property. The court ruled that this provision constituted an unconstitutional taking under the United States and Utah constitutions. This issue was not appealed, and we do not treat it.

*Light Co.,* 796 P.2d 697, 700 n. 6 (Utah 1990); *Mountain Fuel Supply Co. v. Salt Lake City Corp.,* 752 P.2d 884, 890 (Utah 1988) (holding that where level of protection under state constitution meets or exceeds federal standards, there is no need to reach federal constitutional challenges when we can reach decision under Utah Constitution).

### Takings Challenge

■ Whitmer contends that Lindon's statutory scheme creating its secondary water system effects an unconstitutional taking of his North Union water shares under article I, section 22 of the Utah Constitution, which provides, "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22. We disagree. Lindon residents' connection to the municipal pressurized secondary water system is optional. To connect to the secondary water system, Whitmer was required to pay a connection fee of two North Union shares. However, as a shareholder in North Union, he could have continued to irrigate with water from the North Union Canal. Lindon's statutory scheme does not affect the North Union Canal or Whitmer's access to it. Since the value of Whitmer's shares and his use of the North Union Canal were not taken or damaged by Lindon's legislation, there is no violation of article I, section 22 of the Utah Constitution. Furthermore, should Whitmer choose to connect to Lindon's secondary system and transfer his North Union shares to the City, he will receive the value of access to the municipal secondary system in exchange for his shares in North Union. Whitmer has nowhere argued that the value of the North Union shares the City required of him was less than the value of the shares in the municipal secondary system that Lindon promised him in return, nor has he argued that the value of his North Union shares exceeds $750 per share, the price at which the municipal shares were available to Lindon residents who did not own any shares in private water companies.

### Due Process Challenge

■ Whitmer maintains that Lindon's procedure for terminating his secondary water system connection violated his due process rights under Utah law. We reject this argument. Utah's due process clause provides, "No person shall be deprived of life, liberty, or property, without due process of law." Utah Const. art. I, § 7. Lindon's statutory scheme adequately protects the due process rights of its secondary water system users.

Before constructing the secondary water system, Lindon sought a commitment among its residents through an agreement. Cynthia Whitmer, plaintiff's wife, signed this agreement. Lindon provided Whitmer with adequate notice of its policies and rules through both publication and correspondence with Whitmer. After mistakenly connecting Whitmer to the secondary water system, Lindon provided Whitmer with an opportunity to appeal his secondary water service termination within a ten-day period. Whitmer's notification to Lindon of his intent to appeal was untimely. Lindon mailed the notice of termination on August 19, 1993, and Whitmer received it on August 23, 1993. Regardless of which date begins the tolling of the ten-day period, Whitmer's September 7, 1993, notice of appeal was too late.

Furthermore, connection to the secondary water system is optional. Lindon went beyond its obligations under Utah Constitution article I, section 22 in providing Whitmer with notice and an opportunity to be heard under its voluntary secondary water connection statutory scheme. In *Rupp v. Grantsville City,* 610 P.2d 338, 342 (Utah 1980), we held that water service termination for residents who failed to pay an initial sewer connection fee did not violate due process because the city provided notice and an opportunity to be heard. In that case, the connection fee was required of all residents. However, in this case, Whitmer was not required to transfer his water shares because he was not required to connect to the secondary water system.

### Equal Protection and Uniform Operation of the Laws Challenges

■ Whitmer contends that Lindon's scheme violates both federal and Utah law because it creates two classes of secondary water users. Whitmer alleges that under

Lindon ordinance 1–92, water share owners must exchange their shares for a connection to Lindon's secondary water system, while those without water shares may purchase the connection by paying in cash. Whitmer's argument is not persuasive. The mere fact that legislation creates a classification does not mean that it violates the Utah Constitution.

We have recognized that article I, section 24, the uniform operation of the laws provision of the Utah Constitution, establishes different requirements from the federal Equal Protection Clause. *State v. Mohi*, 901 P.2d 991, 997 (Utah 1995). However, we have made clear that Utah's uniform operation of the laws provision is "at least as exacting, and in some circumstances, more rigorous than the standard applied under the federal constitution." *Mountain Fuel*, 752 P.2d at 889. Therefore, "we need only determine whether the ordinances in question satisfy article I, section 24" of the Utah Constitution. "If so, they will pass federal muster." *Id.* at 890.

Whitmer attacks the constitutionality of Lindon's scheme under article I, section 24 of the Utah Constitution, which states, "All laws of a general nature shall have uniform operation." In *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 637 (Utah 1989), we discussed the level of scrutiny applied to a challenged classification under article I, section 24 of the Utah Constitution. We held in *Blue Cross* that "[i]n scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is reasonable, whether the objectives of the legislation are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes." *Id.* (citations omitted); *see also Mountain Fuel*, 752 P.2d at 890. The burden upon a plaintiff to demonstrate unconstitutionality is a heavy one. *Blue Cross*, 779 P.2d at 637.

Whitmer does not show that Lindon's scheme is unreasonable. While Lindon creates two classes of residents, water share owners and those without water shares, this distinction is reasonably related to Lindon's legitimate goal of protecting the viability of its culinary water system by providing a secondary water system for irrigation. Whitmer acknowledges that this purpose is legitimate. Therefore, this court must determine whether the classification itself is reasonable and whether there is a reasonable relationship between Lindon's purpose and its legislative classification.

We conclude that Lindon's statutory scheme is reasonable. First, the distinction Lindon draws between water share owners and other residents is reasonable. Lindon needs the water shares to supply its secondary water system adequately and, initially, required the commitment of some water share owners to secure state funding for its secondary system. Second, Lindon's classification reasonably relates to its purpose of providing an adequate water supply for the secondary system.

Lindon took reasonable steps to offset the drain on its culinary water delivery system created by growth and to avoid the waste and inefficiency of residents' irrigating with high-quality culinary water. Requiring those water share owners who choose to connect to the municipal secondary water system to transfer water shares to the City instead of paying cash for the connection represents a reasonable means to secure the water resources necessary for the City's secondary water system and therefore does not violate Utah's uniform operation of the laws provision.

In view of the foregoing conclusions, we affirm the trial court's judgment of dismissal.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM'S opinion.